ROBERT LOUIS MUNDELIUS

*v.*

STATE OF ILLINOIS.

*Opinion filed December 3, 1910.*

MILITARY SERVICE—*award for injuries while in.* Claimant, a member of the Illinois National Guard, while in camp at Camp Lincoln and while in the performance of his duties, was injured by being kicked by a horse. *Held*, that claimant is entitled to an award on account of such injury sustained and loss of time occasioned thereby.

C. Fred Rush, for Claimant.

W. H. Stead, Attorney General, for State.

Robert Louis Mundelius, claimant in this case, was a member of Troop C, First Cavalry, Illinois National Guard. He enlisted in said organization on November 22, 1906. On August 11, 1907, claimant was at Camp Lincoln with his troop pursuant to general order No. 4, issued by order of the Commander-in-Chief. About 4:30 o'clock in the afternoon of August 11, Troop C was ordered out with the regiment for evening parade.

The claimant, Robert Louis Mundelius, was with his troop, and while the regiment was passing in review before the regimental commander, according to orders by the regimental commander, the claimant was kicked by the horse next to him on the right, which was being ridden by one Corporal Miller.

The horse struck him on the right leg on the tibia midway between the knee and ankle. He was at once taken to the hospital for treatment where he remained five days. The external evidence of the injury was a hole which penetrated into the bone and the bone was splintered. The serious character of the injury did not appear to the surgeon at the hospital at Camp Lincoln, as after four or five days claimant was discharged from the hospital, with the information that there was nothing seriously wrong with his leg, and

he was told to walk around on crutches and use his leg as much as he could.

After his return to Chicago claimant's leg still continued to hurt him and he consulted a doctor in his neighborhood who advised him to go to the hospital. This he did. At the hospital it was found that the wound had become infected and efforts were made by chiseling out part of the bone along the side of the fracture, to institute a perfect drainage and by antiseptic treatment, to overcome the infection and if possible save claimant's leg.

It was found, however, that it was impossible to overcome the infection, and in March, 1908, the leg was amputated below the knee joint with the object of saving the knee joint. After the operation the original infection still persisted, and it was evident that nothing but an amputation above the knee would be a cure. The leg was again amputated, above the knee, in July, 1908.

During the time of his injury claimant was in the hospital at one time two (2) months and at another time five (5) months and during the intervals was treated at his home. Claimant has been unable to do much work ever since he was injured. Prior to his injury he was a barber, earning about twenty ($20.00) dollars per week. Claimant had no means of support except his wages as a barber and had a family consisting of a wife, who was an invalid, one child and his wife's mother. During the time since he was injured he has been supported by money borrowed from his friends and relatives and by money raised by subscription and donated to him. His physician bills have been guaranteed by his friends. The total amount of money borrowed, hospital and surgeon bills, amounts at the present time to about twenty-six hundred ($2,600.00) dollars.

From the facts, as above set forth, it is clear that the case of claimant comes within section 4 of article 11 of chapter 129, being the military and naval code of

Illinois, in force July 1, 1903, which was the law at the time of the injury to claimant. The only question which remains in the opinion of the Court, is the amount which should be paid the claimant.

It clearly appears that during the past three years claimant has been able to do very little work so that he has lost almost his entire time for three (3) years. The evidence discloses that he was receiving about twenty ($20.00) dollars per week wages, which for the three years would amount to about three thousand ($3,000.00) dollars.    The evidence discloses that he has become liable for money borrowed, physician and hospital bills to about the amount of twenty-six hundred ($2,600.00) dollars; that of this amount about sixteen hundred ($1,600.00) dollars was for hospital and surgeon bills.    This shows an actual loss to the claimant in loss of time and extraordinary expenses up to the present time of about forty-six hundred ($4,600.00) dollars.  In addition to this loss of time and extraordinary expenses, there is to be taken into consideration the fact, of the extreme suffering that has been endured by claimant, and the further fact, that he is permanently injured and his productive ability greatly reduced.

This is not an ordinary case of the loss of a leg, but is extraordinary by reason of the unfavorable manner in which this wound refused to respond to treatment and the length of time that claimant has been laid up; and it appears to the Court, that claimant should be paid for his loss of time and his unusual expense in connection with the treatment of his wound, in addition to the amount which has been ordinarily allowed by this Court in cases of similar character.  Arriving at a conclusion in this manner, we have therefore fixed the damage of claimant at the sum of fifty-five hundred ($5,500.00) dollars.